IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM DUNCAN                                                      PLAINTIFF

V.                                  NO. 4:09CV00458 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                        DEFENDANT

**MEMORANDUM AND ORDER**

**I. Introduction**

Plaintiff, William Duncan, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs[1] (docket entries #19 and #20), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

---

[1] Plaintiff filed a "Motion for Summary Judgment" (docket entry #18) and a "Brief in Support of Summary Judgment" (docket entry #19), which the Court collectively will construe as Plaintiff's Appeal Brief. It is the practice in the Eastern District of Arkansas for Social Security disability appeals to be submitted on Appeal Briefs, *not* on summary judgment papers.

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On December 13, 2006, Plaintiff filed applications for SSI and DIB, alleging disability since December 7, 2006, due to problems resulting from a left arm laceration and left wrist drop. (Tr. 112-13). After Plaintiff's claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). On October 22, 2008, the ALJ conducted an administrative hearing, during which Plaintiff and a vocational expert ("VE") testified. (Tr. 18-48).

At the time of the administrative hearing, Plaintiff was 47-years old, had completed the ninth grade, and had obtained a GED. (Tr. 22). Plaintiff had past work experience as a forklift operator and in answering phones in an office. (Tr. 24, 36).

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.*, § 404.1520(4)(ii), § 416.920. If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920. If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920. If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his December 31, 2008 decision (Tr. 10-17), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date; (2) had "severe" impairments consisting of left wrist drop and a visual impairment; (3) did not have impairments meeting a Listing; (4) had the RFC "to lift 20 pounds occasionally, 10 pounds frequently, stand/walk 2 hours at a time throughout an 8-hour work day with breaks, sit two hours at a time throughout an 8-hour workday with breaks, left-hand dominant with no grip or dexterity in left hand can use [sic] as an assistive device, and blurry left eye;" and (5) could return to his past relevant work as it was actually performed.[3] (Tr. 10-17). Thus, the ALJ concluded that Plaintiff was not disabled.

On February 13, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed

---

[3]As indicated, the ALJ concluded that, at Step 4, Plaintiff could return to his past relevant work as he actually performed it. Although not listed in his decision as a formal finding, the ALJ made an alternative Step 5 finding, based on VE testimony, that Plaintiff could perform other work in the national economy, such as a "surveillance monitor/call out operator." (Tr. 17).

his Complaint appealing that decision to this Court. (Docket entry #1).

## II. Analysis

In Plaintiff's Appeal Brief (docket entry #9 at 13-17), he argues that the ALJ erred in concluding that he could return to his past relevant work as he performed it. For the reasons discussed below, the Court concludes that Plaintiff 's argument has merit. In order to understand Plaintiff's argument, it is helpful to review the medical evidence and the testimony at the administrative hearing.

On April 23, 2000, Plaintiff punched a glass window while intoxicated and lacerated the distal portion of his left upper arm. (Tr. 224). On April 26, 2000, Plaintiff underwent a surgical exploration of the laceration, and a repair of the radial nerve, triceps muscle, and brachioradialis muscle. (Tr. 184-87). In a June 30, 2000 follow-up appointment with his hand surgeon, Dr. David Taylor, Plaintiff was noted "to have returned to work." (Tr. 221). Dr. Taylor also indicated that Plaintiff "[m]ay drive a forklift at work if wearing a left wrist splint." (Tr. 221).

At the administrative hearing, Plaintiff testified that from 1987 through 2002, he worked as a warehouse laborer and a forklift operator for Lyrick Studio. (Tr. 24, 126). Plaintiff, who is left-hand dominant, testified that he injured his left arm in 2000. (Tr. 24). After the injury, Plaintiff stated that he did not work because he was on "disability workman's comp" or "like a disability thing" for five to six months. (Tr. 35). He later learned that his company was shutting down the warehouse where he worked, and that, in order for him to receive a severance package, he had to return to work. (Tr. 24).

Plaintiff characterized his post-injury return to work as follows: "I went back to work part-time no work [sic] though, I just sat in the office with a, I had a cast, a hard-shelled cast on my arm

with, with these wires to hold my hand up and I stayed there until they closed the doors." (Tr. 25). According to Plaintiff, "[t]hey just put me in the office." (Tr. 25). Plaintiff testified that his employer did this because "I couldn't use my arm at all because it was in that cast and I didn't know whether I would be able to [sic] because it was still in the cast and the surgeon told me that I'd have to wait until my cast come off to see how my hand would be but it didn't get no better." (Tr. 25).

Plaintiff testified that when he returned to work, his duties were to answer the phone. (Tr. 36). According to Plaintiff, he only worked half-days, even though he was being paid as if he were working full time. (Tr. 36). Plaintiff testified that he performed this "office" work for three to four months before the company shut down the warehouse. (Tr. 36). Plaintiff's last day of work was in July 2002. (Tr. 36). He attributed a substantial increase in his 2002 earnings to his severance package. (Tr. 23).

After the warehouse closed down, Plaintiff interviewed for a few other jobs, "but they asked me about my arm and I told them that I can't use it." (Tr. 26). Plaintiff first applied for disability in 2002.[4] (Tr. 26). Plaintiff testified that he could drive. (Tr. 29). He struggled to write his name with his left hand, and he could not grip or pick anything up with his left hand. (Tr. 37). He testified that, when he was working in the "receptionist job," he was not using his left hand because it was "in a cast with wires." (Tr. 47).

In the ALJ's hypothetical question, he asked the VE to assume a claimant that had the RFC for light work, was left-hand dominant but had no grip or dexterity in the left hand, and "the wrist

---

[4]At the beginning of the administrative hearing, the ALJ noted that Plaintiff previously had been denied disability benefits "at least" twice in 2004 and 2005. (Tr. 21). Plaintiff's counsel conceded that there was no basis for reopening the prior denials, and amended the alleged onset date to December 7, 2006. (Tr. 21).

is perpetually bent, can't be straightened out, basically just an assistive device with the right non-dominant hand." (Tr. 41).  The VE answered that the hypothetical claimant "could return to the receptionist work . . . as he was performing it if it's sedentary work and as long as he could use that non-dominant hand to answer the phone and write down brief messages . . . he could do that kind of work." (Tr. 41).  The VE added that the same hypothetical claimant could also perform other jobs in the economy such as a surveillance system monitor and a callout operator.  (Tr. 42).

On cross examination, Plaintiff's counsel asked the VE whether all of the preceding jobs "contemplate the use of bilateral manual dexterity?"  The VE's response was that "[g]enerally yes but these are jobs that can be done as I noted *if he could use that left non-dominant hand* as he did with the receptionist job as a check off then he could do these jobs . . . these can be done with occasional use and as I had said if he could use that left arm, the left hand to work as he did with this receptionist job which was semi-skilled, sedentary then he could certainly do those other two[.]" (Tr. 44) (emphasis added).

Plaintiff contends that the ALJ did not make adequate findings as to the demands of his past relevant work as he actually performed it.  He emphasizes his testimony that he essentially did nothing but show up at the office on a part-time basis for a short time before the warehouse closed.  According to Plaintiff, he did not perform the tasks demanded of a receptionist job, and the ALJ's decision lacks specific findings that he did.

The ALJ elected to rely on VE testimony to assist him in assessing the demands of Plaintiff's past relevant work, and whether Plaintiff could return to it as he actually performed it.[5]  Plaintiff's

---

[5]While an ALJ may elect to call a VE to describe the demands of past relevant work, either as performed by the claimant or as it is generally performed in the national economy, he is not required to do so.  *See* 20 C.F.R. § 416.960(b)(2).  An ALJ is required to make "explicit findings"

characterization of his post-injury work was inconsistent and not credible in a number of areas.[6] Thus, the overall record presents a weak case supporting Plaintiff's claim for disability.

Nonetheless, the problem with the ALJ's Step 4 analysis is that he relied on VE testimony that is hopelessly inconsistent. The ALJ asked the VE to assume that the hypothetical claimant was *left-hand dominant*, with limitations in his use of his *dominant left hand*, and the VE provided a response affirming that the claimant could return to Plaintiff's past relevant office work as well as other work. However, the VE's testimony on cross-examination indicated that he understood and believed that Plaintiff's left hand was his *non-dominant hand*. This testimony put the ALJ in the position of guessing whether the VE properly understood how Plaintiff performed his past relevant

---

regarding the demands of a claimant's past relevant work, and to compare those demands to the claimant's RFC. *See* Social Security Ruling 82-62 (explaining that the ALJ'S Step 4 determination that a claimant can return to his past relevant work must include: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation). "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work." *Sells v. Shalala*, 48 F.3d 1044, 1046 (8th Cir. 1995).

[6]Plaintiff's testimony concerning when he returned to work was inconsistent. In earlier testimony, he said that, after his April 2000 injury, he was off of work for about "five to six months" before he returned and was placed in the "office." This would have had Plaintiff working "in the office" all of 2001 and through July of 2002. (Tr. 24, 35). In contrast, Plaintiff later testified that he only worked "part time" for about "three to four months" before the company warehouse shut down in July 2002. In his Appeal Brief, Plaintiff insists that he only went back to work on a part-time basis for three to four months.

Plaintiff's earnings records from Lyrick Corporation reflect that, in 1999, the year before Plaintiff was injured, he earned 27,738.02. (Tr. 104-07). In 2000, the year of his injury, he earned $24,681.37. *Id.* In 2001, he earned $27,333.47, and in 2002, he earned $40,554.08 (which included a "severance package"). Contrary to Plaintiff's characterization, his earnings history strongly suggests that he returned to full-time work shortly after his injury, and continued working in that position for at least a year, if not longer. *Id. See also* Tr. 113 (In a "Disability Report — Adult" social security form, Plaintiff reported that he had an "accident in 2000 and went back to work doing a different job that would accomadate [sic] his lack of use in his dominant arm")

work and whether the VE actually meant that Plaintiff could perform his past relevant work as long as his left hand was his non-dominant hand. The ALJ had a duty to clear up this important discrepancy with further questioning to ensure that the VE correctly understood the hypothetical question, including: (1) the fact that the hypothetical claimant was left-hand dominant; and (2) how Plaintiff actually used his dominant left hand in performing his past relevant work. The ALJ's failure to fulfill this duty has placed the Court in a position of having to guess what the VE meant. Under these circumstances, the Court concludes that substantial evidence does not support the ALJ's Step 4 determination that Plaintiff could return to his past relevant work as he actually performed it.[7]

### III. Conclusion

For the foregoing reasons, the Court concludes that substantial evidence does not support the ALJ's Step 4 determination. On remand, the ALJ should develop a record as to the demands of Plaintiff's past relevant work, make explicit findings concerning those demands, and compare them to the Plaintiff's assessed RFC. The ALJ should also carefully update the medical record and ensure that he obtains and considers all of the medical evidence to support his RFC assessment.

---

[7] The Commissioner argues that, even if the ALJ erred at Step 4, the Court should still affirm because Plaintiff has briefed no argument challenging the ALJ's alternative Step 5 determination that Plaintiff could perform other jobs in the national economy. Inexplicably, Plaintiff notes in his Appeal Brief that "the ALJ never reached [Step 5] since he determined that Plaintiff would return to his past relevant work as a receptionist." (*Pltff's App. Brf.* at 5). Plaintiff is simply mistaken because the ALJ made an alternative Step 5 finding in his decision. (Tr. 17).

In an appropriate case, the Court would be inclined to agree with the Commissioner. However, under the circumstances of this case, where the Step 5 jobs identified by the VE appear to have the same exertional and manipulative requirements as the past-relevant receptionist job, the same problem exists at Step 5 that the Court is confronted with at Step 4. Because the record in this case is muddled as to whether the VE understood that Plaintiff's limitations were in his *dominant* left hand, substantial evidence does not support the ALJ's alternative Step 5 finding.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 3rd day of September, 2010.

/s/ J. Thomas Ray
UNITED STATES MAGISTRATE JUDGE